# EXHIBIT AU

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRANDALL TECHNOLOGIES LLC,<br><br>                  Plaintiff,<br>v.<br>GREATCALL INC.,<br><br>                  Defendant. | Case No.: 18-CV-1396-CAB-MDD<br><br>**CLAIM CONSTRUCTION ORDER** |
| GREATCALL INC.,<br><br>                  Counter Claimant,<br>v.<br>CRANDALL TECHNOLOGIES LLC,<br><br>                  Counter Defendant. | |

      This matter is before the Court for the construction of certain terms and phrases in the claims of United States Patent No. 8,854,789 ("the '789 patent"). [Doc. No. 21-7.] The parties, plaintiff Crandall Technologies and defendant GreatCall Inc., briefed the claim construction in accordance with this District's local rules and the scheduling order in this case. The Court held a claim construction hearing on May 23, 2019. For the reasons set

forth on the record the Court construes the following claim terms and phrases as set for the below.

1. **Self-defense system**

The preamble of the two independent claims of the disclosed system, Claims 1 and 17, describes an application of the claimed system to be for self-defense. [Col. 25:30, and Col. 28:8.]  The Court does not find this application to be a limitation and therefore finds construction to be unnecessary.

2. **Pressure sensor unit**

Both claims 1 and 17 include the limitation of "a pressure sensor unit integrated with a wireless transmitter, said pressure sensor unit configured to generate a pressure input signal." [Col. 25:32-34; Col.28:10-12.]  The pressure sensor unit is described in the specification at Col. 12:13-15, 24-31 and generally at Figs. 12 and 14.  The Court denied defendant GreatCall's argument that 35 U.S.C. § 112(6) should apply to the construction of this "unit" finding sufficient structure within the claim to inform a person of ordinary skill in the art what the limitation covers.

The Court construes pressure senor unit as **a device containing one or more pressure sensors that senses applied pressure and generates an electronic, electromagnetic or optical signal.**  The plain language of both Claims 1 and 17 includes the further limitation that the unit have an integrated wireless transmitter to send the generated signal to the defense unit's wireless receiver.

3. **Defense Unit**

Claim 1 includes the limitation of "a defense unit coupled with said material, said defense unit integrated with a wireless receiver configured to wirelessly receive said pressure input signal from said wireless transmitter, and said defense unit configured to initiate a defense event based on said pressure input signal." [Col. 25:35-39.]  Claim 17 includes the limitation of "a defense unit coupled with said material and communicatively associated with said manual selector, said defense unit integrated with a wireless receiver configured to wirelessly receive said pressure input signal from said wireless transmitter,

and said defense unit configured to initiate a defense event in response to either of said pressure input signal and manual execution signals." [Col. 28:15-21.]

The Court finds "defense unit" to be subject to Section 112(6), as it has no known meaning in the art. The function of the defense unit is to initiate a "defense event" in response to a pressure input signal or manual execution signal. The patent supports an interpretation of "a defense unit" **as one or more of the disclosed arrangements that can initiate one or more of the defined events the patentee identified as "defense events."** To ascertain the structures in the specification that correspond to the function of initiating a defense event in response to a pressure input signal or manual execution signal, the Court first looks the definition provided in the patent of a "defense event."

A **defense event** is a term coined by the patentee and is defined in the body of the patent. A defense event is an application of the claimed system and acts as claim limitation in so far as it provides the context for determining the structures disclosed in that patent that function as defense units.

A defense event is defined as:

(1) **Spraying a substance (e.g., a lachrymatory agent or pepper spray)**
(2) **Generating a voltage differential across two electrodes of a stun gun**
(3) **Projecting a projectile (e.g., a rubber bullet)**
(4) **Sounding an alarm**
(5) **Capturing information pertaining to the event, and/or**
(6) **Routing an amount of captured information to a preselected entity (e.g., law enforcement agency, emergency medical response)**
(7) **Or other events that are similar in kind.**

[Col. 6:14-20.]

The various structures disclosed in the patent that are identified as components that initiate a defense event, as defined above, and therefore would be understood to be a **defense unit** are:

- **One or more projector units** [Col. 6:31-43; Fig. 1B (160, 170); Col. 7:50-63; Fig 3A (300)], that may include a container with a liquid substance [Col. 8:31-43; Fig. 4];

- **One or more conductive energy devices** [Col. 7:64-Col. 8:17; Fig. 3B (301)];
- **One or more projectile units** [Col. 8:18-26; Fig. 3C (302)];
- **Audio input unit (microphone)** [Col. 16:51-58; Fig. 24 (2410)];
- **Image input unit (digital camera)** [Col. 17:16-23; Fig. 26 (2610)];
- **Video input unit (digital recording device**) [Col. 17:50-58; Fig. 28 (2810)];
- **Geolocation unit (GPS)** [Col. 18:16-27; Fig. 30 (3010)];
- **Alarm unit (audio speaker)** [Col. 18:53-19:20; Fig. 32 (3220)];
- **Transmitter to route captured information** [Col. 16:62-67; Col. 17:28-34; Col. 17:62-67; Col. 18:32-39; Co. 19:21-26; Figs. 24, 26, 28 30, 32 (2450); Col. 23:57-67].

Claims 1 and 17 have the further limitation that a defense unit is 1) coupled to the material sized to conform to an appendage, and 2) is integrated with a wireless receiver, and for 17 is also communicatively associated with a manual selector.

4. **Conductive Energy Device/Voltage Differential**

The Court denied defendant GreatCall's argument that 35 U.S.C. § 112(6) should apply to the construction of this "device" finding sufficient structure within the claim to inform a person of ordinary skill in the art what the limitation covers. Dependent Claims 3 and 9 describe a "conductive energy device" as two electrodes configured to generate a voltage differential between said electrodes based on said execution signal or pressure input signal. [Col. 25:51-54, Col. 26:37-40.]

The conductive energy device of the patent is a "defense unit" that initiates a "defense event," and therefore to function in accordance with the patent the "voltage differential" generated by the conductive energy device is defined by the specification. The conductive energy device corresponds to the defense event of "[generating] a voltage differential across two electrodes of a stun gun." [Col. 6:15-17; Col 7:64-Col 86.] The Court therefore construes the "voltage differential" generated by the conductive energy device as **above 50 kilovolts to stun or disable**.

5. **Manual Selector**

Dependent Claim 8 includes the limitation of a "manual selector communicatively associated with said defense unit and configured to generate a manual execution signal in

response to a selection of said manual selector." [Col. 26:30-33.] Independent Claim 17 includes the limitation of a "manual selector configured to generate a manual execution signal" that is "communicatively associated" with a defense unit. [Col. 28:13-16.] The Court finds "manual selector" to be subject to Section 112(6), as it has no known meaning in the art, but is a device "configured to generate a manual execution signal."

The corresponding structure in the specification is described at Col. 15:24, 30-40, 58-67; Figs. 19 (1910)[1], 21A (2100), 21B (2100), a push button that may be recessed.

### 6. Comparator

Dependent Claims 2 and 5 have the limitation of a "comparator." [Col. 25:41-44; Col. 25:65-Col. 26:4.] There was no dispute that a comparator in the field of electronics is an instrument for comparing measurements. The Court construed comparator as **a device capable of generating an output based on a comparison.** Claim 2 further defines the comparator as "communicatively associated with said defense unit" and "configure to conduct a comparison of two electronic signals and generate an execution signal based on sail comparison." Claim 5 further defines the comparator as "communicatively associates with one or more pressure sensors" and "configured to compare said one or more pressure input signals with a threshold voltage and generate an automatic execution signal in response to an absolute value or magnitude of at least one of said one or more signal amplitudes being above an absolute value or magnitude of said threshold voltage."

### 7. Sized to Conform to an Appendage

Although the parties did not seek construction of this phrase, it is a limitation o of both Claims 1 and 17, that the system include a material "sized to conform to an appendage," to which the defense unit is coupled. [Col. 25:31, 35; Col. 28:9, 15.] The Court anticipates that this claim term may be significant in the disposition of this case. The specification describes various materials that can be sized or adjusted to conform to a user's

---

[1] Figure 19 and (1910) do not provide any corresponding structure or information describing or defining the limitations of the manual selector.

hand, wrist or lower arm. [Col. 5:56-Col. 6:9.] The Court proposed a construction for "sized to conform" as **sized to have the same shape, outline or contour** of an appendage, and "appendage" as **the head, arm or leg (or part thereof) of the human body**. Should either party seek a different construction of this phrase, it may request leave to file a proposed construction in the future.

It is **SO ORDERED**.

Dated: May 28, 2019

Hon. Cathy Ann Bencivengo
United States District Judge